# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | | |
|---|---|---|
| JOSEPH YUNGANDREAS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. _____ |
| UNUM LIFE INSURANCE COMPANY OF AMERCIA, AND UNUM GROUP, | § § § § § | |
| Defendants. | § § | |

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

**COMES NOW**, **PLAINTIFF** Joseph Yungandreas, and makes the following representations to the Court for the purpose of obtaining relief from Defendants' refusal to pay long-term disability benefits due under an employee benefits plan under ERISA, and for Defendants other violations of the Employee Retirement Income Security Act of 1974 ("ERISA").

## JURISDICTION AND VENUE

1. This Court's jurisdiction over the Plaintiff's claims for long term disability benefits is invoked under federal question jurisdiction pursuant to 28 U.S.C. § 1331 and under the express jurisdiction found in the ERISA statute under 29 U.S.C. § 1132(e) (ERISA § 5-2(e)).

1

2. Plaintiff's claims "relate to" an "employee welfare benefits plan" or "plans" as defined by ERISA, 29 U.S.C. § 1001 *et seq.*, and the subject disability benefit plans constitutes a "plan under ERISA."

3. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2569.503-1 provide a mechanism for administrative or internal appeal of benefits denials.

4. In this case, the aforementioned avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

5. Venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

6. Plaintiff, Joseph Yungandreas (hereinafter "Plaintiff" or "Mr. Yungandreas"), was at all relevant times, a resident of Parkville, Maryland.

7. Plaintiff alleges upon information and belief that the IDEXX Laboratories, Inc. Plan (hereinafter "Plan") is, and at all relevant times was, an "employee welfare benefit plan" as defined by ERISA.

8. The Plan provides eligible employees with disability income protection as defined by the Plan.

9. Plaintiff alleges upon information and belief that IDEXX Laboratories, Inc. (hereinafter "IDEXX"), was the Plan Sponsor and Plan Administrator Plan.

2

10. IDEXX and/or the Plan additionally maintained or contained other benefits and/or component plans under which Plaintiff may be entitled to benefits if found disabled under the long-term disability Plan.

11. Plaintiff alleges upon information and belief that Defendant Unum Life Insurance Company of America (hereinafter "Unum"), is the party obligated to pay benefits and to determine eligibility for benefits under the Plan and is an insurance company authorized to transact the business of insurance in this state.

12. Unum is the underwriter for Group Policy Number 580733 001 and may be served with process by and through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243-1121.

13. Plaintiff alleges upon information and belief that Defendant Unum Group is the parent corporation of Unum Life Insurance Company of America and exercises significant control over the policies and actions of said company, including its actions in this matter

14. Plaintiff alleges upon information and belief that Defendant Unum Group is the employer of the personnel who acted on behalf of Unum Life Insurance Company of America.

15. Plaintiff alleges upon information and belief that Defendant Unum Group

3

established the policies and procedures governing the management of Plaintiff's disability claim, the policy for document retention and otherwise established the procedures under which the decision-makers made the decision that is the subject of this law suit, and was the *de facto* decision-maker in the Plaintiff's claim.

## FACTS

16. Defendant Unum was the entity responsible for processing claims and adjudicating appeals regarding long-term disability benefits under the Plan.

17. The long-term disability Plan is fully insured by Unum under Group Policy Number 580733 001.

18. The Plaintiff timely filed an application for benefits under the Plan, was subsequently denied benefits, Plaintiff timely appealed, and Unum issued its final denial on October 19, 2020.

19. The Plaintiff was employed as a Medical Laboratory Technician by IDEXX, and as such, Plaintiff was thereby a participant or beneficiary of the Plan, and is covered by the policy that provides benefits under the Plan.

20. The Plaintiff ceased work on or about August 18, 2013, due to a disability while covered under the Plan.

21. The Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

22. In accordance with the review procedures set forth in the Plan, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1, Plaintiff appealed the claim until exhausting the required plan appeals.

23. Having submitted his appeal, and as confirmed by Unum, Plaintiff exhausted his administrative remedies.

24. Based on the terms of the insurance policy, Plaintiff's complaint is timely and is not otherwise time barred.

25. Plaintiff is entitled to long term disability benefits as he has met the long-term disability Plan's requirements, and his disability continues to prevent him from performing the material and substantial duties of his regular occupation and any gainful occupation for which he is reasonably fitted by education, training, or experience, due to his sickness or injury.

26. The policy does not require objective medical evidence for proof of claim.

27. If disabled pursuant to the terms of the policy, Plaintiff, who was paid long-term disability benefits through May 5, 2020, is entitled to a monthly gross long-term disability benefit of $2,548.52, offset by a Social Security family maximum amount of $2,430.00 (as there is an auxiliary beneficiary), for a net long-term disability benefit of $178.52 from May 6, 2020 to June 16, 2026, and then, after the auxiliary benefit lifts, a monthly long-term disability benefit of $2,548.52, offset by a Social Security primary insurance

amount of $1,620, for a net long-term disability benefit of $928.52 from June 17, 2026 to September 1, 2051, meaning he is entitled to $13,031.13 in back benefits, $155,608.50 in future benefits, with no overpayment owed as it has already been repaid, for a total long-term disability benefit of $168,639.63.

28. Evidence submitted by Plaintiff to Unum supporting his disability includes, *inter alia*, the following: medical records and opinions demonstrating disability after sustaining serious injuries after being involved in a motorcycle accident, including bilateral laminar fracture of T8, spinous process fractures of T6-T7, and a lumbar fracture with spinal cord injury. Plaintiff continues to have residual T7-T8 thoracic myelopathy with bilateral lower extremity weakness, spasticity, hyper reflexes, altered sensation, sustained right-sided ankle clonus, and altered gait pattern. Plaintiff continues to take medication for his pain which causes sedation. As a result, Plaintiff is not a reliable employee in a normal workday or week because he requires more rest breaks than competitive employment typically allows, he would be off task more than 10% of any given workday, and he would be absent from work 2 or more days of every month. Plaintiff also applied for and continues to receive Social Security disability benefits.

29. Unum terminated Plaintiff's long-term disability benefits after his

neurologist, Dr. Gorman, completed a form for Unum on April 24, 2020. Four months prior to completing the April 24, 2020 form, Dr. Gorman completed another form for Unum on December 20, 2019, indicating that Plaintiff cannot perform sedentary work because, *inter alia*, he requires frequent rests for a during a full workday. The April 24, 2020 form was constituted differently than the earlier form. However, it is clear from the context that Dr. Gorman thought he was stating that Plaintiff could only do a sedentary job occasionally for 0-2.5 hours a day either in total or before requiring significant rest breaks because Dr. Gorman circled that specific limitation. This would be consistent with his earlier December 20, 2019 opinion. Additionally, there is nothing in Dr. Gorman's medical records that show any improvement between December 20, 2019 and April 24, 2020 and the two opinions should have been read contextually. Instead, Unum terminated Plaintiff's benefits without recontacting Dr. Gorman regarding seeming ambiguities or inconsistencies in two forms filled out only 4 months apart and the concomitant field investigation Unum performed was consistent with Plaintiff's continuing disability.

30. Ignoring evidence of pain, fatigue, or other disabling conditions because they are subjective is arbitrary and capricious. *Miles v. Prudential Life Insurance Co.*, 720 F.3d 472, 486 (2d Cir. 2013).

7

31. An ability to perform the material and substantial duties of any fulltime occupation requires reliability, consistency, substantial capacity, psychological stability, and steady attendance. *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir. 1980); *Tippitt v. Reliance Std. Life Ins. Co.*, 457 F.3d 1227, 1236 (11th Cir. 2006); *McIntyre-Handy v. APAC Customer Services, Inc.*, 2005 WL 5369158, *6 (E.D. Va. 2005); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994).

32. Job preclusive vocational limitations include, *inter alia*, needing additional, unscheduled work breaks, being off task more than 10% of the work period, and/or being chronically absent. *Johnson v. Saul*, 2019 WL 6876012, at *3 (E.D.Mo., 2019); *Ricardo C. v. Saul*, 2019 WL 4034484, at *2 (N.D.Ill., 2019); *Hicks v. Commissioner of Social Security*, 2016 WL 2605234, at *4 (E.D.Mich., 2016); *Mershad v. Commissioner of Social Security*, 2016 WL 659307, at *12 (S.D.Ohio, 2016); *Coffman v. Commissioner of Social Security*, 2015 WL 9311522, at *3 (E.D.Mich., 2015); *Williams v. Commissioner of Social Sec.*, 2013 WL 3771381, at *6 (E.D.Mich., 2013).

33. There is no requirement that the insured provide *only* objective medical evidence or other objective indica of disability. Since the policy does not say it, Unum does not have the authority to require it. *See*, *e.g.*, 29 U.S.C. § 1104(a)(1)(d); *Fifth Third Bancorp. v. Dudenhoeffer*, 134 S.Ct. 2459, 2468

8

(2014), *Salomaa v. Honda*, 642 F.3d 666, 678 (9th Cir. 2011); *Carradine v. Barnhart,* 360 F.3d 751,755 (7th Cir. 2004); *Abdullah v. Accentcare Long Term Disability Plan*, 2012 WL 4112291 *11 (N.D. Cal); *Krupp v. Liberty Life Assurance Company of Boston*, 936 F.Supp.2d 908, 917 (N.D. Ill. 2013).

34. The relevant policy allows for independent medical examinations and functional capacity examinations. Unum failed to conduct any such examinations. All of Unum's opinions come from file reviews. Non-examining evidence has little value in evaluating pain, fatigue or impaired focus, concentration, or cognition. *See*, *e.g.*, *Kalish v. Liberty Mutual*, 419 F. 3d 501, 508 (6th Cir. 2005); *Calvert v. Firstar Finance, Inc.*, 409 F. 3d 286, 295 (6th Cir. 2005); *Smith v. Aetna*, 312 F. Supp. 2d 942, 954 (S.D. Ohio 2004); *Meyer v. MetLife*, 341 F. Supp. 2d 865 (S.D. Ohio 2004); *Black v. Unum Life Insurance Company of America*, 324 F. Supp. 2d 206, 215 fn.8 (D. Me. 2004).

35. Unum, as an ERISA fiduciary, will have to show it exercised care, skill, prudence, diligence, and loyalty solely for the benefit of Mr. Yungandreas like that borne by a trustee under common law. *See* § 1002(21)(A)(i) and (iii); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220, 124 S. Ct. 2488, 2502 (2004); *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 803 (7th Cir.),

9

*cert. denied*, 130 S. Ct. 200 (2009). Unum's denial of Mr. Yungandreas's long-term disability benefits is itself evidence that it failed to behave as a fiduciary in the instant matter.

36. Unum relied on medical consultants for file reviews during the administrative appeal of Plaintiff's disability claim and said consultants opined, *inter alia*, that Plaintiff had minor impairments which had no meaningful impact on his functionality without addressing his work reliability, consistency, substantial capacity, and steady attendance.

37. More specifically, the medical consultants primarily said much of Mr. Yungandreas's complaints were self-reported. This is irrelevant under the policy as there is no time limitation or exclusion for self-reported complaints, symptoms, or illnesses. There is no question that the Plaintiff's statements about his functionality, if true, preclude all competitive full-time work.

38. There are no challenges to Mr. Yungandreas's credibility. In other words, Mr. Yungandreas's treating physicians have directly addressed his reliability, consistency, substantial capacity, psychological stability and steady attendance. Unum's medical consultants have failed to substantively account for, much less address, any of these issues. Accordingly, Mr.

Yungandreas has satisfied his obligations of providing proof of his disability under the policy.

39. The Plaintiff has now exhausted his required administrative remedies for his long-term disability benefits under the Plan pursuant to ERISA or such administrative remedies are deemed exhausted and/or his long-term disability benefits are deemed denied.

40. The Court's standard of review for the ERISA claims is *de novo* under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

41. The entity that chose to deny long term disability benefits would pay any such benefits due out of its own funds.

42. Defendant Unum was a claims decision-maker under a perpetual conflict of interest because the long-term disability benefits would have been paid out of its own funds.

43. Defendant Unum allowed its concern over its own funds to influence its decision-making.

44. Defendant has acted under a policy to take advantage of the potential applicability of ERISA to claims.

45. Unum's administrative process did not provide Plaintiff with a full and fair review; by way of example, Unum's denial letters did not contain the

11

specific reasons for the denial and did not advise Plaintiff of the information Unum required in order to approve his continuing benefits.

46. The disability insurance policy does *not* provide Unum with discretionary authority.

47. In the alternative, relevant state law bans any such clause purporting to confer Unum with discretionary authority.

48. At all times relative hereto, Unum has been operating under an inherent and structural conflict of interest because any monthly benefits paid to Plaintiff are paid from Unum's own assets with each payment depleting those same assets.

49. As the party obligated to pay benefits and the administrator given discretion in construing and applying the provisions of the disability plan and assessing Plaintiff's entitlement to benefits, Unum is an ERISA fiduciary.

50. Under ERISA, a fiduciary must carry out its duties with respect to the plan solely in the interest of the participants and beneficiaries for the exclusive purpose of providing benefits to participants and their beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent individual acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

51. Unum failed to satisfy its duties under ERISA as specified in paragraph 50 of this complaint.

52. Under ERISA, a fiduciary should fully investigate the relevant and applicable facts of any claim.

53. Unum failed to satisfy its duties under ERISA as specified in paragraph 52 of this complaint.

54. Under ERISA, a fiduciary should fairly consider all information obtained regarding a claim, including that which tends to favor claim payment or continuation as well as that which tends to favor claim declination or termination.

55. Unum failed to satisfy its duties under ERISA as specified in paragraph 54 of this complaint.

56. Under ERISA, a fiduciary should consider the interests of its insured at least equal to its own and to resolve undeterminable issues in its insured's favor.

57. Unum failed to satisfy its duties under ERISA as specified in paragraph 56 of this complaint.

58. Under ERISA, a fiduciary has the obligation to read, interpret and understand all of the pertinent medical information with sufficient clarity so as to be able to make a fair, objective and thorough evaluation of its insured's claims for disability benefits.

59. Unum failed to satisfy its duties under ERISA as specified in paragraph 58 of this complaint.

60. Under ERISA, a fiduciary's denial of a claim should not be based on speculation.

61. Unum failed to satisfy its duties under ERISA as specified in paragraph 60 of this complaint.

62. Under ERISA, a fiduciary should be objective in its assessment of facts and not attempt to bias the claims investigation process in any manner.

63. Unum failed to satisfy its duties under ERISA as specified in paragraph 62 of this complaint.

64. Under ERISA, a fiduciary should not take into consideration the amount of money it would save if a particular claim or set of claims is denied, terminated, or otherwise not paid.

65. Unum failed to satisfy its duties under ERISA as specified in paragraph 64 of this complaint.

66. Under ERISA, a fiduciary should refrain from excessive reliance on in-house medical staff to support the denial, termination, or reduction of benefits.

67. Unum failed to satisfy its duties under ERISA as specified in paragraph 66 of this complaint.

68. Under ERISA, a fiduciary should not conduct unfair evaluation and interpretation of attending physicians' or independent medical examiners' reports.

69. Unum failed to satisfy its duties under ERISA as specified in paragraph 68 of this complaint.

70. Under ERISA, a fiduciary should evaluate the totality of its insured's medical conditions.

71. Unum failed to satisfy its duties under ERISA as specified in paragraph 70 of this complaint.

72. Under ERISA, a fiduciary has an obligation to conduct a fair, thorough, and objective review.

73. Unum failed to satisfy its duties under ERISA as specified in paragraph 72 of this complaint.

### CAUSE OF ACTION
### FOR PLAN BENEFITS AGAINST ALL DEFENDANTS
### PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

**PLAINTIFF** incorporates all the allegations contained in paragraphs 1 through 73 as if fully stated herein and says further that:

74. Under the terms of the Plan, Defendant agreed to provide Plaintiff with long term disability benefits in the event that Plaintiff became disabled as defined in the Plan.

75. Plaintiff is disabled under the terms of the Plan.

76. Defendant failed to provide benefits due under the Plan, and this denial of benefits to Plaintiff constitutes a breach of the Plan.

77. The decision to deny benefits was wrong under the terms of the Plan.

78. The decision to deny benefits and decision-making process were arbitrary and capricious.

79. The decision to deny benefits was not supported by substantial evidence in the record.

80. The decision-making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claims, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

81. The appellate procedures did not provide the Plaintiff a full and fair review.

82. As an ERISA fiduciary, the Defendant owed the Plaintiff fiduciary duties, such as an obligation of good faith and fair dealing, full and complete information, and a decision-making process free of influence by self-interest.

83. The Defendant violated the fiduciary duties owed to the Plaintiff.

84. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability and in failing to provide a full and fair review of the decision to deny benefits, Plaintiff has been damaged in the amount equal to the amount of benefits to

which Plaintiff would have been entitled to under the Plan, and continued benefits payable while the Plaintiff remains disabled under the terms of the Plan.

85. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## **PRAYER FOR RELIEF**

**WHEREFORE**, **PLAINTIFF** requests that this Court grant him the following relief in this case:

1. A finding in favor of Plaintiff against Defendant;
2. Damages in the amount equal to the disability income benefits to which he was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);
3. Prejudgment and postjudgment interest;
4. An Order requiring Defendants to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan;
5. An Order requiring the Defendants and/or Plan to provide Plaintiff with any other benefits to which he would be entitled pursuant to a finding that he is disabled under the Plan;

6. Plaintiff's reasonable attorney fees and costs; and

7. Such other relief as this Court deems just and proper.

Dated this 7th day of July, 2023.

Respectfully submitted,

BY: */s/D. Seth Holliday*
D. SETH HOLLIDAY
**MCMAHAN LAW FIRM, LLC**
TN Bar No.: 023136
700 S. Thornton Avenue
P.O. Box 1607
Dalton, Georgia 30722
(706) 217-6118
sholliday@mcmahanfirm.com

*Attorneys for Plaintiff*